<hr />

91 A.3d 680

Carl J. BARRICK and Brenda L. Barrick

v.

HOLY SPIRIT HOSPITAL OF the SISTERS OF CHRISTIAN CHARITY, Individually and Doing Business as Holy Spirit Hospital, Sodexho Management, Inc., Sodexho Operations, LLC and Linda J. Lawrence.

Appeal of Sodexho Management Inc., Sodexho Operations LLC, and Linda J. Lawrence.

Supreme Court of Pennsylvania.

Argued April 10, 2013.

Decided April 29, 2014.

Stephen Elias Geduldig, Esq., Stephanie Lynn Hersperger, Esq., John J. McNally, Esq., Thomas, Thomas & Hafer, L.L.P., Harrisburg, for Sodexho Management, Inc., Sodexho Operations, LLC and Linda J. Lawrence.

Brett Wray Farrar, Esq., Pittsburgh, Thomas M. Chairs, Esq., Aaron Scott Jayman, Esq., Dickie, McCamey & Chilcote, P.C., Camp Hill, for Holy Spirit Hospital of the Sisters of Christian Charity.

John P. Gismondi, Esq., Gismondi & Associates, P.C., Pittsburgh, Wayne Fulton Shade, Esq., Carlisle, for Carl J. Barrick and Brenda L. Barrick.

### *ORDER*

PER CURIAM.

**AND NOW,** this 29th day of April 2014, the Court being evenly divided, the Order of the Superior Court is **AFFIRMED.**

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justice BAER files an opinion in support of affirmance in which Justices TODD and McCAFFERY join.

Justice SAYLOR files an opinion in support of reversal in which Chief Justice CASTILLE and Justice EAKIN join.

### *OPINION IN SUPPORT OF AFFIRMANCE*

Justice BAER.

This Court granted review to consider the application of the rules of civil procedure to the discovery of communications between attorneys and expert witnesses, specifically Pa.R.C.P. 4003.3, addressing the scope of discovery and attorney work product, and Pa.R.C.P. 4003.5, governing disclosures relating to expert witnesses. These rules attempt to balance the competing policies of promoting the truth-determining process through liberal discovery but also protecting attorney work

product from discovery to encourage efficient and effective client representation. After considering these policies under the language of the current rules, we would affirm the holding of the Superior Court and create a bright-line rule denying discovery of communications between attorneys and expert witnesses.

This personal injury action resulted from the serious injuries allegedly suffered by Carl Barrick when a chair in which he was sitting collapsed in the cafeteria of Defendant Holy Spirit Hospital, which is managed by Defendant Sodexho Management. After Plaintiffs Carl and Brenda Barrick filed suit, Defendants [1] served a subpoena in March 2008 to obtain the records (including relevant correspondence) of Dr. Thomas Green, Plaintiff's treating orthopedic surgeon. The doctor's practice group supplied the requested records without objection.

In May 2009, Defendants requested updated records from Dr. Green's practice. The practice disclosed some records but, on Plaintiffs' counsel's advice, withheld "[c]ertain records of this office that pertain to [Plaintiff Carl Barrick] but were not created for treatment purposes." Certificate of Compliance dated June 16, 2009, at 1, *found at* Reproduced Record ("R.R.") at 51. In response, Defendants filed a motion to enforce the subpoena, to which Plaintiffs objected, asserting, apparently for the first time, that they had designated Dr. Green an expert witness, subject to Pa.R.C.P. 4003.5, governing discovery for expert witnesses.[2] Given Dr. Green's altered

---

**1.** While Plaintiffs filed suit against Holy Spirit Hospital, Sodexho, and Sodexho's employee, only the Sodexho defendants are appellants before this Court. Nonetheless, the hospital filed a brief as appellee but in support of the Sodexho defendants and in favor of discovery of the correspondence.

**2.** In relevant part, Rule 4003.5 provides:

Rule 4003.5. Discovery of Expert Testimony. Trial Preparation Material

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

status, Plaintiffs contended that all communications between counsel and him constituted privileged material pursuant to Pa.R.C.P. 4003.3 and 4003.5. R.R. at 52–57.

After reviewing the file *in camera,* the trial court granted Defendant's motion to enforce the subpoena. As explained in its subsequent opinion, the trial court considered and rejected the option of trial courts reviewing redacted correspondence, opining "that it is seldom possible to discern where the legal theory of counsel ends and the medical opinion being sought from the expert begins." Tr. Ct. Op. at 5. The court expressed particular concern with the *in camera* review process where the court does not have participation of the parties' counsel to provide context to the documents being reviewed. Adopting a bright-line rule favoring full discovery, the trial court granted discovery of the correspondence between counsel and Dr. Green, "where an expert is being called to advance a plaintiff's case in chief and the nature of the expert's testimony may have been materially impacted by correspondence with counsel." *Id.* at 5–6 (footnote omitted). The trial court did not expressly analyze or apply the civil procedural

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

(2) Upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

(3) A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of court as to any other expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

Pa. R.C.P. 4003.5.

rules concerning work product or expert witnesses, or make any factual findings as to whether Defendants had satisfied the "cause shown" requirement for additional discovery, pursuant to Pa.R.A.P. 4003.5(a)(2), above and beyond the expert's facts and opinions and a summary of the grounds for each opinion discoverable under Pa.R.C.P. 4003.5(a)(1).

Plaintiffs appealed to the Superior Court, asserting that the issue was subject to immediate appeal as a collateral order. *See* Pa.R.A.P. 313; *see also Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547, 552 (1999) ("There is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." (internal quotation marks omitted)). In their Rule 1925(b) statement, the Barricks argued that they should not be required to disclose records beyond those developed for diagnosis and treatment, and specifically, that letters and emails exchanged between their counsel and Dr. Green are protected from discovery insofar as they were prepared in anticipation of litigation and address the role of the physician as an expert witness.

Initially, a panel of three judges affirmed the trial court's order, concluding that Defendants were entitled to discover whether the expert's conclusions were his own or guided by Plaintiffs' counsel.[3] However, upon Plaintiffs' petition, an *en banc* panel of the Superior Court reversed the trial court. The court held that the records were "beyond the permissive scope" of Rule 4003.5(a)(1), which provides for discovery through interrogatories of the "substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." *Barrick v. Holy Spirit Hosp.,* 32 A.3d 800, 810 (Pa.Super.2011). Moreover, the court concluded that the Defendants failed to satisfy Rule 4003.5(a)(2)'s provision allowing additional discovery "[u]pon

---

3. In apparent reaction to the original panel decision, the Civil Procedural Rules Committee proposed an amendment to Rule 4003.5 which would provide protection for the correspondence between counsel and expert witnesses. Although the proposal is currently pending before this Court, we address this case under our current rules.

cause shown," because Defendants did not show cause prior to serving the subpoena.[4]  *Id.* at 811.

Additionally, the Superior Court concluded that Rule 4003.3's protection of attorney work product shielded the correspondence from disclosure.  In part, Rule 4003.3 provides, "The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories."[5]  The court, however, acknowledged that the comment to the rule provides that the protection applies to the listed items but "nothing more."  Pa.R.C.P. 4003.3 cmt.  The court also recognized, but deemed inapplicable, the limited exception for disclosure of attorney work product where the

4.  The panel also concluded that the Defendants improperly sought the records directly from Dr. Green, when under Rule 4003.5, the request should have been made through Plaintiffs' counsel.  It appears that Defendants were not aware when they requested the documents that Dr. Green was an expert witness, rather than a treating physician.  Presumably as a result of the lack of a designation, Defendants did not follow the required procedure for discovery of expert witnesses via interrogatories rather than subpoenas.

As they had not requested the records properly pursuant to Rule 4003.5(a)(1), the Superior Court found that the Defendants needed to show cause regarding the document request pursuant to subsection (a)(2).  It is beyond the scope of our review to consider whether Defendants on remand may seek further discovery under Rule 4003.5, in light of the procedural history of this case involving the designation of Dr. Green as an expert witness.

5.  In full, Rule 4003.3 provides:

Rule 4003.3. Scope of Discovery.  Trial Preparation Material Generally

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent.  The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.  With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3.

product itself is "relevant" to the underlying action, such as when a party raises the defense of good faith reliance on counsel. Accordingly, although the panel opined that *in camera* review may be necessary to determine what aspects of the communications are protected by the privilege, the court broadly held that "the correspondence at issue in this case is not discoverable" as it would violate the attorney work product under Pa.R.C.P. 4003.3 and 4003.5. *Barrick*, 32 A.3d at 813.

In a concurring and dissenting opinion, Judge Bowes agreed with the Superior Court majority's application of Rule 4003.5 to the facts of the case barring discovery of the documents by subpoena, keeping in mind that as a discovery rule, Rule 4003.5's protection would only extend until trial because "an expert's file becomes available for an opponent's inspection and use at trial." *Barrick*, 32 A.3d at 815, 817 (Bowes, J., concurring and dissenting). While the dissent apparently would have joined the denial of discovery based upon Rule 4003.5, it "part[ed] company with the majority regarding the balance of its holding" addressing Rule 4003.3. *Id.* at 815. The dissent instead opined that Rule 4003.3 did not support a blanket protection for correspondence between counsel and an expert witness, but only protected the attorney's work product as limited to the attorney's mental impressions and "conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. 4003.3. She noted that if work product was deemed to apply to all the documents the protection would extend through trial, in contrast to any denial of discovery under Rule 4003.5. *Barrick*, 32 A.3d at 817.

This Court granted review of the following issue raised by Defendants:

Whether the Superior Court's interpretation of Pa.R.C.P. No. 4003.3 improperly provides absolute work product protection to all communications between a party's counsel and their trial expert?

*Barrick v. Holy Spirit Hosp.*, 616 Pa. 589, 52 A.3d 221, 222 (2012).

Before this Court, Defendants highlight Pennsylvania's long history of liberal discovery to prevent unfair surprise at trial. They observe that Pa.R.C.P. 4003.1(a) generally permits a party to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Defendants emphasize that the work product doctrine set forth in Rule 4003.3 is a departure from the general rule which should be narrowly construed. They note that the work product exception is not a creature of common law, like the attorney-client privilege, but instead is a convention created by rule.

Defendants acknowledge that the purpose of the work product doctrine in Rule 4003.3 is to provide the attorney privacy to develop theories and legal strategy without exposure to the opposing side. Defendants maintain, however, that the work product doctrine is not absolute but, rather, a limited exception to the general rule of liberal discovery. They contend that "an attorney providing a trial expert with facts or other information, or telling the expert what to say, does not result in counsel developing new legal theories or advancing a factual investigation," and thus these exchanges should not be protected. Defendants' Brief at 18. They resist the argument that the expert's bias can be challenged on cross-examination, claiming instead that opposing counsel would not be able to scrutinize effectively the expert without having the documents disclosing the extent to which the expert had been influenced by counsel.[6]

Arguing that correspondence between counsel and an expert witness are not protected under Rule 4003.3, Defendants also assert that they could be discoverable under Rule 4003.5(a)(2) "[u]pon cause shown." Defendants assert that "[w]ithout having access to this highly relevant documentation, the testimo-

6. To the extent Defendants argue that the correspondence falls under a "relevancy exception" to the work product doctrine, we note that the relevancy exception is limited to situations "where the legal opinion of an attorney becomes a relevant issue in an action; for example, an action for malicious prosecution or abuse of process where the defense is based on a good faith reliance on a legal opinion of counsel." Pa.R.C.P. No. 4003.3 cmt. This case does not fall into such a category.

ny of Plaintiffs' expert at trial may be misleading and the truth-finding process and integrity of the judiciary process called into serious question." Defendants' Brief at 27. Defendants argue that they are not seeking discovery of all written communications between attorneys and experts, but rather only when a trial court in its discretion finds cause has been demonstrated pursuant to Rule 4003.5(a)(2). Indeed, they emphasize that the trial court, which reviewed the documents *in camera*, deemed the documents discoverable.

Defendants assert that the more restrictive, bright-line rule proposed by the Plaintiffs and adopted by the *en banc* Superior Court panel, is "untenable because it does not balance the important competing rights at issue, in this case, attorney work product protection and a party's right to discover all of the facts and bases for a trial expert's opinions." Defendants' Reply Brief at 3. Defendants assert that the Plaintiffs' proposal "ignores the reality that sometimes it is necessary for a party to discover the opposing party's expert file because there is cause to believe that the attorney provided the expert with additional or different facts, data, assumptions or grounds, which are not in the expert's report." Defendants' Reply Brief at 11. Therefore, Defendants ask us to reverse the decision of the *en banc* Superior Court panel and reinstate the order of the trial court compelling discovery.[7]

In response, Plaintiffs argue that the communications between counsel and an expert witness fall within the broad purview of the work product doctrine, pursuant to Rule 4003.3. They contend that even if the correspondence may be relevant and useful for Defendants' cross examination of the expert, "privilege always 'trumps' relevance." Plaintiffs' Brief at 1. Plaintiffs assert that many things may be relevant to an opponent's case that are nonetheless shielded from discovery. For example, Plaintiffs assert that it would be highly relevant to have a routine right to pre-trial depositions of experts, but

---

7. While in this case, it is Defendants who seek to discover communications between Plaintiffs' counsel and expert, we note that the result here will impact plaintiffs and defendants equally to the extent they present expert testimony and correspondingly face discovery demands from the opposing party.

that is not allowed in Pennsylvania. Moreover, Plaintiffs observe that Rule 4003.1 instructs that relevance must yield to privilege: "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter." Plaintiffs' Brief at 5 (quoting Pa.R.C.P. 4003.1) (emphasis removed).

Plaintiffs maintain that the work product privilege is not a document privilege but a thought process privilege. They include in the work product protection the correspondence between counsel and expert because it helps frame how counsel will strategize the case. They argue that the purpose of witness preparation is to discover what theories to advance and how to respond to cross-examination, actions that the work product doctrine was intended to protect.

They additionally note that the federal courts in 2010 adopted a new rule barring discovery of attorney-expert communication with three limited exceptions: if the discovery: "(1) relates to expert compensation; (2) identifies facts the expert relies upon; or (3) identifies assumptions the expert relies upon." Plaintiffs' Brief at 15 n. 9. Plaintiffs assert that this change was supported by a wide spectrum of organizations, including the American Bar Association. Plaintiffs quote the rationale of the formal Advisory Committee Note:

The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects. Costs have risen. Attorneys may employ two sets of experts—one for purposes of consultation and another to testify at trial—because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses. At the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work.

Plaintiffs' Brief at 17.[8]

Plaintiffs contend that adopting the Defendants' argument will result in increased costs as counsel will have to hire two sets of experts, which creates an improper competitive advantage to the side that can afford the second set of experts. Moreover, Plaintiffs allege that the liberal discovery of correspondence between attorneys and experts will waste litigant and court time due to unnecessary review and will lead to "wild goose chases," and delay in case disposition though endless discovery motions. Plaintiffs' Brief at 18. Moreover, Plaintiffs argue that the disclosure of expert correspondence undermines the purpose of experts which is to allow counsel to get a full understanding of the strengths and weaknesses of their cases and to allow attorneys and experts to play devil's advocate when preparing for trial. Plaintiffs reason that there is no need for *in camera* review because our system is based on the assumption that counsel will respond truthfully to discovery requests. They argue that expert discovery is no different than standard document discovery.

As noted above, Plaintiffs highlight that the Civil Procedural Rules Committee drafted a proposed amendment to Rule 4003.5 with a similar prohibition. According to Plaintiffs,

The Proposed Amendment contains new subparagraph (a)(4) which states: "[A] party may not discover the communications between another party's attorney and any expert who is to be identified pursuant to subdivision (a)(1)(A) regardless of the form of the communications." And new language in (a)(2) makes it clear that, except for information concerning fees paid to experts, the "for cause" subsection is superseded by the earlier ban on attorney-expert discovery.

Plaintiffs' Brief at 19. Plaintiffs urge the adoption of the amendment which would result in a bright-line rule that attorney-expert communications are not discoverable.

---

**8.** Defendants respond to Plaintiffs' reliance on the federal move toward more stringent protection of work product, asserting that the new limitation on work product discovery in federal court is not relevant to Pennsylvania discovery because the federal system provides far greater discovery related to expert witnesses than does Pennsylvania.

In resolving this case, we must interpret the interaction of Pa.R.C.P. 4003.3, governing the scope of discovery and attorney work product, and Pa.R.C.P. 4003.5, entitled "Discovery of Expert Testimony." Accordingly, "[a]s questions regarding the interpretation of the Rules of Civil Procedure are questions of law, our standard of review is *de novo* and our scope of review is plenary." *Marlette v. State Farm Mut. Auto. Ins. Co.*, 618 Pa. 617, 57 A.3d 1224, 1228 (2012). "Within the ambit of the discretionary authority allocated by the rules to the trial courts, we review for abuse of discretion." *Cooper v. Schoffstall*, 588 Pa. 505, 905 A.2d 482, 488 (2006).

Pennsylvania's rules of civil procedure broadly provide that a "party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Pa.R.C.P. 4003.1. Indeed, Rule 4003.3 furthers the liberal discovery rule, instructing that "a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney." [9] Pa.R.C.P. 4003.3. These provisions advance the truth-determining process so essential to our judicial system and prevent unfair surprise at trial.

However, Rule 4003.3 balances the general rule of expansive discovery with the deep-rooted protection of attorney work product: "The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. 4003.3. As has been observed, the work product protection supports our judicial system, based on the adversarial process by allowing counsel privacy to develop ideas, test theories, and explore strategies in support of the client's interest, without fear that the documents in which the ideas, theories and strategies are written will be revealed to the opposing counsel. Allowing counsel to document legal theories without concern of disclosure encourages better representation of clients, which in turn benefits

9. The full text of Rule 4003.3 is set forth, *supra* p. 683 n. 5.

justice. *See Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)(observing that without the protection, "[i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.").

The explanatory comment to Rule 4003.3 describes the "broad category" of work product materials but also limits the work product exception as follows:

> The essential purpose of the Rule is to keep the files of counsel free from examination by the opponent, insofar as they do not include written statements of witnesses, documents or property which belong to the client or third parties, or other matter which is not encompassed in the broad category of the "work product" of the lawyer. Documents, otherwise subject to discovery, cannot be immunized by depositing them in the lawyer's file. The Rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more.

Pa.R.C.P. 4003.3, cmt.

Rule 4003.5 specifically addresses discovery related to expert witnesses who are expected to testify at trial, where such information is "otherwise discoverable" under Rule 4003.1, which recognizes that privileged documents are not discoverable.[10] Generally, a party may discover "facts known and opinions held by an expert" through interrogatories requiring the party to identify the testifying expert witness, the subject matter on which the expert will testify, "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Pa.R.C.P. 4003.5(a)(1)(b); *see supra* p. 681 n. 2 for text of Rule 4003.5. Additionally, "[u]pon cause shown, the court may order fur-

10. Rule 4003.5(a)(3) provides, in part, that "[a] party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial...." Pa.R.C.P. 4003.5(a)(3).

ther discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate." Pa.R.C.P. 4003.5(a)(2).

This rule paradigm, thus, embraces both liberal discovery and protection of attorney work product. While simple to apply in the abstract, this case demonstrates the difficulty that arises when the two policies converge. At the extreme are documents that consist solely of attorney work product. Rule 4003.3 mandates that such documents be protected: "The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. 4003.3. Accordingly, if such a document was sent to the expert witness, it would be protected by Rule 4003.3's work product provision.

While some documents might solely contain an attorney's mental impressions and legal theories, most correspondence between counsel and an expert witness will necessarily entail substantial overlap and intermingling of core attorney work product with facts which triggered the attorney's work product, including the attorney's opinions, summaries, legal research, and legal theories. In contrast to our esteemed colleagues writing in support of reversal, we conclude that attempting to extricate the work product from the related facts will add unnecessary difficulty and delay into the discovery process. Redaction followed by *in camera* review would result in needless litigation adding expense to the parties and tying up the trial courts. Indeed, the trial court below favored a bright-line rule, albeit in favor of discovery, because it expressed concern for imposing *in camera* review of these documents on trial courts when they do not have the benefit of counsel providing context to the documents *in camera*. Tr. Ct. Op. at 5. Moreover, the *in camera* review process could potentially result in the erroneous disclosure of attorney-expert witness correspondence, which will not only invade protected core work product but, in a worst case scenario, would also constitute prejudicial error necessitating an appel-

late court's grant of a new trial with all the inefficiencies, burdens, and costs attendant thereto.

Our colleagues in the Opinion in Support of Reversal (OISR) rely upon *Cooper v. Schoffstall*, 905 A.2d at 492–93, to discount our concern with burdening trial courts with redacting attorney work product from correspondence with expert witnesses, noting that we recognized "a particularized need for trial court involvement in determining the appropriate scope of discovery." The OISR is undoubtedly correct that we approved of the involvement of trial courts in determining when the Rule 4003.5 "cause shown" requirement has been met; indeed, the language of the rule clearly provides that "[u]pon cause shown, the court may order further discovery." Pa.R.C.P. 4003.5(a)(2). Our decision in *Cooper*, however, does not speak to a trial court's burden of redacting attorney work product.

Instead, *Cooper* involved a request for an expert witness's "federal form 1099 tax records associated with his performance of services as an independent contractor ... in undertaking 'defense-related reports, examinations, and depositions.'" *Cooper*, 905 A.2d at 485. We had no reason to consider the interaction of Rule 4003.5 and the protection of attorney work product in Rule 4003.3. Moreover, in contrast to the OISR's view that a party should turn over redacted attorney-expert correspondence, this Court in *Cooper* did not require the expert witness to turn over his records, but instead opted for a more limited disclosure. Observing that "discovery along these lines should be of the least burdensome and intrusive kind possible," we concluded that "the appropriate entry point, upon the showing of cause, is a deposition by written interrogatories under Rule of Civil Procedure 4004." *Id.* at 495.[11]

Similarly, we see no need for courts to draw fine lines between what should and should not be redacted when the properly discoverable information can be obtained through

11. We did not foreclose further discovery "after an assessment of the interrogatory responses," if, for example, the responses indicated "a strong showing that the witness had been evasive or untruthful." *Id.* at 496.

other discovery methods that do not intrude upon attorney work product, as set forth in Rule 4003.5 governing expert witnesses. Parties may seek discovery of information through interrogatories propounded under Rule 4003.5(a)(1) and where appropriate, may obtain further discovery "upon cause shown" as supervised by our trial courts in accord with 4003.5(a)(2). Additionally, the expert's opinions can be challenged on cross-examination. Thus, we conclude that it is preferable to err on the side of protecting the attorney's work product by providing a bright-line rule barring discovery of attorney-expert communications.[12]

We additionally recognize that the Procedural Rules Committee has proposed an amendment to Rule 4003.5 which would embrace unambiguously the bright-line rule denying discovery of all attorney-expert communications: "[a] party may not discover the communications between another party's attorney and any expert who is [expected to testify as an expert witness at trial] regardless of the form of communications." 40 Pa. Bull. 7334 (Dec. 25, 2010). Without further comment, we acknowledge that the explanatory comment to the proposal indicates that the "[c]urrent practice in Pennsylvania has not been to seek discovery of communications between the attorney and his or her expert." *Id.* Although we do not rely upon this statement as substantive justification for our analysis of the current rule, nonetheless, it would appear that the Rules Committee believes that adoption of a bright-line test for denying discovery of communications between counsel and expert witnesses would not result in a change of practice in Pennsylvania. Our consideration of the proposed amendment to the rule is entirely separate, however, from the

12. While it is possible that correspondence might include no attorney work product, we view this category to be extremely limited given that it would be the unusual correspondence between an attorney and expert witness that did not contain any "mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. 4003.3. Moreover, allowing discovery of these documents could result in unnecessary litigation and *in camera* review as assertive counsel skirmish with each other to determine whether the documents contain any attorney work product. For all the reasons stated above, we would deny discovery as to this limited category of documents as well.

determination of the case before us, which, as initially noted, is governed by the current rule.

For the reasons set forth above, we would affirm the decision of the Superior Court denying the Defendants' discovery motion seeking correspondence between counsel and the expert witness based upon Pa.R.C.P. 4003.3, in conjunction with current Pa.R.C.P. 4003.5. We recognize that this case is before this Court on an interlocutory discovery motion, such that this Court's affirmance by operation of law will result in remanding the case to the trial court for further pre-trial proceedings.

Justices TODD and McCAFFERY join.

## OPINION IN SUPPORT OF REVERSAL

Justice SAYLOR.

This Court's procedural rules simply do not establish a categorical prohibition against discovery of all correspondence between an attorney and an expert, and, accordingly, the Superior Court's holding to the contrary should be reversed. Furthermore, to the degree to which this appeal is being used as a vehicle to modify the existing rules, we differ sharply with our colleagues' delineation and treatment of the salient policy considerations.

The Rules of Civil Procedure allow for a broad scope of discovery, including "any matter, not privileged, which is relevant to the subject matter involved in the pending action," subject to the provisions of, *inter alia,* Rules 4003.3 and 4003.5, so long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.C.P. 4003.1(a), (b).

Rule 4003.3 governs the discovery of trial preparation materials and states:

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's

representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3. Discovery related to expert testimony is specifically addressed in Rule 4003.5, which provides, in relevant part:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have *each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.* The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

(2) *Upon cause shown, the court may order further discovery by other means,* subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

Pa.R.C.P. 4003.5 (emphasis added). How these rules interact has caused some confusion regarding the discoverability of written communications between a party's attorney and an

expert witness.  *See, e.g., Pavlak v. Dyer,* 59 Pa. D. & C.4th 353, 356 (C.P. Pike 2003) (referencing a "tension between Pa.R.C.P. 4003.3 which protects attorney work product from discovery, and Pa.R.C.P. 4003.5 which allows for the discovery of 'facts known and opinions held' by testifying expert witnesses including the grounds for each opinion, even if those facts were acquired in anticipation of litigation").  Fundamentally, this matter requires that we resolve that tension.

In its Rule 1925(a) opinion, *see Barrick v. Holy Spirit Hosp.,* No. 07–3604, *slip op.* (C.P. Cumberland Dec. 15, 2009), the trial court looked for guidance to the published decision in *Pavlak,* which surveyed relevant caselaw from several state and federal jurisdictions.  The court initially agreed with *Pavlak* that facts reviewed by an expert in formulating his opinion are subject to disclosure although they may be contained within communications to or from counsel.  However, the court was uncomfortable with the solution developed in *Pavlak,* whereby the correspondence could be redacted before it reached the proponent of the discovery, but such redactions would potentially be subject to *in camera* review to ensure their propriety.  In the trial court's view, it is difficult to ascertain where counsel's theories end and an expert's opinions begin, and furthermore, the *in camera* review process as contemplated in *Pavlak* occurs without the participation of the parties' counsel, thereby substantially depriving the court of its ability to make an informed judgment concerning a document's discoverability.

Ultimately, the court deemed it impractical for common pleas courts to attempt to redact counsel's theories or review counsel's redactions for appropriateness.  Accordingly, the court imposed a "bright line" rule pursuant to which Appalachian was required to produce the communications without redaction, concluding that, "where an expert is being called to advance a plaintiff's case in chief and the nature of the expert's testimony may have been materially impacted by correspondence with counsel, such correspondence is discoverable."  *Id.* at 5–6 (footnote omitted).[1]  Notably, however, the

1.  In *Intermedics, Inc. v. Ventritex, Inc.,* 139 F.R.D. 384, 397 (N.D.Cal. 1991), the court reached the same result after a developed analysis,

trial court did not expressly analyze or apply the civil procedural rules concerning work product or expert witnesses, or make any factual findings as to whether Appellants had satisfied the "cause shown" requirement for additional discovery above and beyond the expert's facts and opinions and a summary of the grounds for each opinion. *See* Pa.R.C.P. 4003.5(a)(2) (quoted above).

A panel of the Superior Court initially affirmed in a memorandum opinion. Examining the Rules of Civil Procedure, the panel found a conflict between Rule 4003.3, which precludes discovery of an attorney's mental impressions, and Rule 4003.5(a), which requires disclosure of a testifying expert's opinions and the facts upon which such opinions are based. The latter provision, the court developed, would seem to incorporate an attorney's communications with an expert, which may include the attorney's thought processes, contrary to Rule 4003.3. Reconciling these provisions, the panel held that discovery should supersede the work product doctrine under the circumstances, given that the protections of Rule 4003.3 do not create an absolute privilege, whereas Rule 4003.5 specifically requires disclosure of the substance upon which an expert's opinions are based, including information contained within correspondence. Like the trial court, the panel also found *Pavlak* instructive, but declined to require redaction and *in camera* review, instead imposing a *per se* rule in favor of disclosure. The court explained that, in light of its interpretation of the pertinent rules, "*in camera* inspection would be duplicative and a waste of judicial resources." *Barrick v. Holy Spirit Hosp.,* No. 1856 MDA 2009, *slip op.* at 14 (Pa.Super.2010). As applied here, the panel reasoned that Mr. Barrick's medical records could not contain all the information upon which Dr. Green relied in forming his expert opinions; rather, Dr. Green corresponded with counsel in his role as an expert witness and thus necessarily reviewed communications from the Barricks' attorney in the course of developing his expert opinions. Therefore, the court concluded, Appellants "are entitled to discover information which

positing that the outcome would be salutary in curtailing the practice of lawyers unduly influencing expert opinions.

would enable them to ascertain whether Dr. Green's opinions are his own or whether he merely intended to parrot what he was told by counsel." *Id.* at 13.

Reconsideration was granted and the Superior Court, sitting *en banc,* reversed the panel decision in a published opinion. *See Barrick v. Holy Spirit Hosp.,* 32 A.3d 800 (Pa.Super.2011). Addressing Rule 4003.5, the court explained that discovery requests related to non-party expert witnesses retained for trial preparation must be made in the form of interrogatories and submitted to the party, rather than to the expert. *See* Pa.R.C.P. 4003.5(a)(1). The court continued that such interrogatories may only seek the facts and opinions to which the expert is expected to testify and a summary of the grounds upon which those opinions are based, while any additional information may be discovered only upon cause shown and with a court order authorizing such discovery. *See* Pa.R.C.P. 4003.5(a)(2); *Barrick,* 32 A.3d at 809–10; *see also Cooper v. Schoffstall,* 588 Pa. 505, 521, 905 A.2d 482, 492 (2006). Here, the Superior Court reasoned, Appellants sought to obtain discovery directly from Dr. Green, the Barricks' expert witness, in contravention of the express language of Rule 4003.5.[2] Additionally, the court noted, a discovery request for correspondence between an opposing party's counsel and expert must proceed via the rule's show cause provision, *see* Pa. R.C.P. 4003.5(a)(2), as such materials are not within the scope of the permissible interrogatories under Rule 4003.5(a)(1).[3]

**2.** The Superior Court criticized Appellants for limiting their initial request to Mr. Barrick's medical records and for using a subpoena to obtain discovery from an expert in "complete disregard of the plain language of Pa.R.C.P. 4003.5," *Barrick v. Holy Spirit Hosp.,* 32 A.3d 800, 806–07 (Pa.Super.2011), inasmuch as discovery from an expert is generally obtained via interrogatories to opposing counsel. *See* Pa. R.C.P. 4003.5(a)(1). The basis for such criticism remains unclear, as Appellants had not been advised that Dr. Green was serving as an expert witness at the time of the subpoenas. Somewhat inconsistently, moreover, the Superior Court overlooked the Barricks' failure to comply with the appropriate procedure for objecting to a subpoena. *See* Pa.R.C.P. 4009.21(c). The majority opted not to address this inconsistency although Judge Bowes highlighted it from a responsive posture. *See Barrick,* 32 A.3d at 814 (Bowes, J., concurring and dissenting).

**3.** The Superior Court did indicate, however, that communications between a party's counsel and expert could be a valid response to

Thus, the intermediate court held that, because Appellants did not demonstrate cause or obtain a court order for the additional discovery prior to serving the subpoenas on Appalachian, the communications between the Barricks' counsel and Dr. Green were not discoverable under Rule 4003.5(a)(2). *See Barrick*, 32 A.3d at 810–11.

As a "separate and independent basis for [its] decision," *Barrick*, 32 A.3d at 813, the court held that, to the extent the correspondence contains the mental impressions or legal theories of the Barricks' attorney, it constitutes work product protected from disclosure by Rule 4003.3. The court continued that this rule "shield[s] the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case . . . without fear that [his] work product will be used against [his] clients." *Id.* at 812 (quoting *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1062 (Pa.Super.2008)); *see also* Pa.R.C.P. 4003.3 cmt. (expressing that the rule "means exactly what it says" and "immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more").

The court acknowledged that an *in camera* review of the documents may be necessary to determine what aspects of the communications are protected by the privilege. *See Barrick*, 32 A.3d at 812. Inconsistently, however, it precluded disclosure of all correspondence between counsel and Dr. Green, broadly stating that "forcing the disclosure of any communications between counsel and an expert witness violates the work product privilege contained in [Rule] 4003.3." *Id.* at 811. In this respect, the court overlooked the possibility that some of the correspondence sought might be partly or wholly free of attorney work product as defined by Rule 4003.3. Furthermore, due to the larger inconsistency between its holding that all communications are protected, and its conclusion that they are only protected if they contain attorney work product (an inconsistency that Judges Bowes fruitlessly brought to the

interrogatories under Rule 4003.5(a)(1) where the expert specifically stated that he had relied on such materials in forming his opinion. *See Barrick*, 32 A.3d at 810 n. 10.

majority's attention), the Superior Court majority's analysis of the interplay between Rules 4003.3 and 4003.5 ultimately lacks coherence.

In a concurring and dissenting opinion, Judge Bowes disagreed with the majority's interpretation of Rule 4003.3 as encompassing all correspondence between an attorney and a trial expert. She observed that nothing in the language of the rule created such a blanket prohibition; rather, she opined, only the mental impressions and conclusions of the attorney are protected. More problematic, Judge Bowes continued, was the majority's utilization of the work product doctrine, without analysis, to shield correspondence not only from the attorney to the expert, but also from the expert to the attorney. Judge Bowes reasoned that, by affording protection to all correspondence, the majority impermissibly expanded Rule 4003.3 and limited the scope of permissible cause-shown discovery under Rule 4003.5(a)(2). In addition, she observed that an expert's file presently becomes available for trial, and that the majority effectively modified current practice by treating all communications as protected work product.

Judge Bowes recognized the salutary purposes of the work product doctrine, but reasoned that those purposes must be balanced against the aims of the discovery rules, including preventing surprise and allowing for a fair trial on the merits. *See Barrick*, 32 A.3d at 817–18 (citing, *inter alia, Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1222 (Pa.Super.2003); *Dominick v. Hanson*, 753 A.2d 824, 826 (Pa.Super.2000)). Thus, Judge Bowes explained, whereas the work-product doctrine should be viewed as an exception to the broad scope of discovery, the majority's holding instead "undermine[s] our High Court's intent to carefully circumscribe the protection afforded an attorney's trial preparation in favor of broader discovery." *Id.* at 818.[4]

---

**4.** Judge Bowes also noted that the Civil Procedural Rules Committee has proposed an amendment to Rule 4003.5 that would preclude discovery of all communications between counsel and a testifying expert. She opined that such revision would be superfluous if Rule 4003.3 already protects such communications. *See id.* at 818 n. 17.

As explained above, the Superior Court's opinion is unclear as to whether it believed the work product doctrine extends as a general precept to all communications between a party's attorney and expert witness, or only to the portion of such materials that contain attorney work product, *compare Barrick*, 32 A.3d at 811 (agreeing that "forcing the disclosure of *any* communications between counsel and an expert witness violates the work product privilege" (emphasis added)), *with id.* at 813 ("[W]ritten communication between counsel and an expert witness retained by counsel is not discoverable ... to the extent that such communication is protected by the work-product doctrine[.]"). Still, we find the creation of a categorical rule precluding all such discovery to be the most apt description of the court's holding, particularly as it issued an order precluding discovery of the communications at issue here, and did not remand either for appropriate redactions or for factual findings as to whether Rule 4003.5(a)(2)'s cause-shown prerequisite had been satisfied relative to any part of the correspondence sought.

As this case illustrates, there is some tension between the goals of protecting attorney work product and allowing fair access to information provided to a testifying expert. An expert hired to assist in a civil case must be informed of the nature of the case and any relevant factual matters. If an attorney provides the expert with all such factual materials and nothing more, the expert must sift through them and decide which items or parts of items are relevant. While this would arguably avoid transmission of attorney work product to the expert, it would be time-consuming and inefficient. It is more helpful for the attorney, who is already familiar with the case and the legal issues involved, to document for the expert any relevant facts and issues. Doing so "facilitates prompt formation of an expert's opinion [and] carries the benefit of efficiency, [but] it may also lead to discovery of such information by the opponent." Duke T. Oishi, *A Piece of Mind for Peace of Mind: Federal Discoverability of Opinion Work Product Provided to Expert Witnesses and its Implications in Hawai'i*, 24 U. HAW. L. REV. 859, 859–60 (2002).

To the degree such discovery would reveal to opposing counsel the attorney's mental impressions, opinions, legal theories, and the like, it is problematic because it intrudes into what has been termed the attorney's "core work product" (as distinguished from purely "factual work product," *see, e.g., Crosby v. City of N.Y.*, 269 F.R.D. 267, 277–78 & n. 50 (S.D.N.Y.2010) (quoting BLACK'S LAW DICTIONARY 1746 (9th ed. 2009))). Core work product is generally protected from discovery based on the principles articulated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), where the Supreme Court recognized "the general policy against invading the privacy of an attorney's course of preparation." *Id.* at 512, 67 S.Ct. at 394. In this regard, the Court developed that:

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511, 67 S.Ct. at 393–94.

At the same time, courts and commentators have recognized that the truth-determining process of a trial requires meaningful cross-examination of expert witnesses, and that to be effective, such cross-examination depends on pre-trial discovery of the information on which the expert relied in formulating his testimony—including that which the attorney supplied. *Accord Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir.1980); Michael H. Graham, *Expert Witness Testimony and the Federal Rules of Evidence: Insuring Adequate Assurance of Trustworthiness*, 1986 U. ILL. L.REV. 43, 44–47, 89–90 (1986). One federal court has outlined certain policy considerations supporting broad disclosure in this regard:

> First, the impact of expert witnesses on modern-day litigation cannot be overstated; yet, to some, they are nothing

more than willing musical instruments upon which manipulative counsel can play whatever tune desired. This thought leads to the belief that expert testimony has often been subject to improper influences, and that counsel can all too easily color the expert's opinion by simply controlling the expert's access to information. To compound the problem and the risk for abuse, expert witnesses testify regarding subjects outside the common knowledge of the finder of fact, so the jury cannot rely on the experience and common sense of its members to ferret out distorted evidence. Thus, full, effective cross examination is critical to the integrity of the truth-finding process.

*Karn v. Ingersoll–Rand Co.,* 168 F.R.D. 633, 639 (N.D.Ind. 1996) (internal quotation marks and citations omitted); *accord In re Christus Spohn Hosp. Kleberg,* 222 S.W.3d 434, 440 (Tex.2007). *See generally Intermedics,* 139 F.R.D. at 394 (stating that the drafters of the federal rules recognized that "assertive, probing, coherent, and well-informed cross-examination [is] essential to equipping the trier of fact to judge the persuasive power and reliability of [expert] testimony and to determine which of competing expert views should be credited, and [this requires that counsel be] permitted to explore thoroughly in pretrial discovery the mental route that the expert ... travelled on the way to his or her conclusions").

The concern regarding manipulative counsel cannot easily be dismissed. In one example, a lawyer authored the expert medical report and sent it to the expert solely for his signature. *See Occulto v. Adamar of New Jersey, Inc.,* 125 F.R.D. 611 (D.N.J.1989). In this latter respect, one court has explained that "it ... could do great damage to the integrity of the truth finding process, if testimony that was being presented as the independent thinking of an 'expert' in fact was the product, in whole or significant part, of the suggestions of counsel." *Intermedics,* 139 F.R.D. at 395–96. As well, the court expressed that even apart from the "parroting" example of *Occulto,* the justice system can be harmed when a lawyer's modest and subtle redirection of an expert's emphasis remains hidden from opposing counsel and the fact-finder, and that

such influence can occur through written suggestion, the packaging of information for the expert, or the timing and sequencing of the data given to the expert. *See id.* at 396. Notably, in its policy analysis the Opinion in Support of Affirmance does not address these types of concerns, opting to give exclusive weight to the competing objectives pertaining to the protection of attorney work product.

We, on the other hand, believe that both sets of considerations are substantial and should be given appropriate weight. In balancing these competing interests under the federal rules, courts have arrived at various solutions. *See, e.g., Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 594–95 (3d Cir.1984) (holding that core work product is always protected but factual work product can be discovered); *Intermedics,* 139 F.R.D. at 387 (permitting discovery of all communications from a lawyer to an expert related to the expert's testimony "absent an extraordinary showing of unfairness that goes well beyond the interests generally protected by the work product doctrine"); *Boring v. Keller,* 97 F.R.D. 404, 407 (D.Colo.1983) (allowing full disclosure of documents reviewed by expert witnesses before their opinions are formed); *SiLite, Inc. v. Creative Bath Prods., Inc.,* No. 91 C 5920, 1993 WL 384562, at *2 (N.D.Ill. Sept. 28, 1993) (permitting discovery of work product that "could have influenced" the expert). *See generally Karn,* 168 F.R.D. at 636–37 (collecting cases and summarizing their varying approaches). Although these decisions have arisen under the federal rules as they have been amended over the years, *see* Fed.R.Civ.P. 26(b)(3), (4), they are helpful here in that they illustrate the general need to trace the contours of allowable discovery relative to testifying expert witnesses with due consideration for the objectives of the work-product doctrine. With this in mind, we now turn to our own rules.

Under the Pennsylvania Rules of Civil Procedure, discovery in civil cases extends to "any matter, not privileged, which is relevant to the subject matter involved in the pending action, ... including the ... content ... of any ... documents," subject to the provisions of Rules 4003.2 through 4003.5. *See*

Pa.R.C.P. 4003.1(a). This includes items prepared in anticipation of litigation or trial. *See* Pa.R.C.P. 4003.3 (quoted above). *See generally Nissley v. Pa. R. Co.*, 435 Pa. 503, 507, 259 A.2d 451, 453 (1969) (noting Pennsylvania's movement toward liberal discovery rules to allow for an opportunity to produce rebutting or qualifying facts). There is no disagreement that any discovery from Dr. Green as a testifying expert must be channeled through Rule 4003.5. *See Cooper*, 588 Pa. at 521, 905 A.2d at 492 (concluding that "Rule 4003.5 should be read to restrict the scope of all discovery from non-party witnesses retained as experts in trial preparation"). Nor is there any dispute that Rule 4003.3 excludes from the broad scope of discovery under Rule 4003.1(a) core attorney work product, that is, "the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. 4003.3.[5] The central question is whether written communications between a party's counsel and an expert witness always fall within Rule 4003.3's description so that they are categorically protected even where the discovery proponent is able to show cause to obtain them pursuant to Rule 4003.5(a)(2).

Rule 4003.3 begins by clarifying that, as a general principle, Rule 4003.1's broad scope of discovery extends to items prepared in anticipation of litigation or trial. After stating this precept, the rule makes an exception by protecting core attorney work product from discovery. *See* Pa.R.C.P. 4003.3.

**5.** The Barricks suggest in passing that an expert witness may qualify as a party's representative for Rule 4003.3 purposes, with the result that the expert's mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics are protected from discovery. *See* Brief for Appellees at 11 n. 5. However, experts do not appear in the list of representatives contained in the rule, and no residual term is employed that would indicate an intention to incorporate additional classes of professionals. *See generally Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 589, 812 A.2d 1218, 1223–24 (2002) (explaining the principle *expressio unius est exclusio alterius* ). While the term "including" may reflect some ambiguity as to whether the list that follows is envisioned as exhaustive, we do not believe expert witnesses would be appropriately subsumed in any event since they are not ordinarily thought of as "representatives" of the client, and, moreover, they are the subject of the specific regulations found in Rule 4003.5.

As the explanatory comment indicates, "nothing more" is protected under this exception. *See id.* cmt. *See generally* Pa.R.C.P. 129(e) (indicating that a comment is not part of the rule but "may be used in construing the rule"). Thus, purely factual or other information—such as evidence and scientific doctrines that an expert may consider when forming an opinion—that does not represent core attorney work product, although contained within communications between counsel and an expert witness, does not fall within Rule 4003.3's protective scope. Under Rule 4003.1(a), therefore, we would hold that it may be discovered—so long as the mandates of Rule 4003.5 are satisfied. That being the case, we would conclude that the Superior Court's suggestion that all communication between counsel and an expert is protected under the work-product doctrine, regardless of its content, cannot be supported. Indeed, the intermediate court's decision is particularly difficult to fathom insofar as it held that communications *from* an expert *to* an attorney are *per se* undiscoverable, *see Barrick,* 32 A.3d at 811, since Rule 4003.3 does not purport to protect such items, and the rule's official comment clarifies that statements by witnesses are not shielded under the work-product privilege.[6]

With that said, we also disagree with the trial court's analysis to the degree it may be construed to suggest that all

6. "The essential purpose of the Rule is to keep the files of counsel free from examination by the opponent, insofar as they do not include written statements of witnesses, documents or property which belong to the client or third parties, or other matter which is not encompassed in the broad category of the 'work product' of the lawyer. Documents, otherwise subject to discovery, cannot be immunized by depositing them in the lawyer's file. The Rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more." Pa.R.C.P. 4003.3, cmt.

In spite of the "nothing more" proviso, the Opinion in Support of Affirmance would likewise extend the privilege to such doctor-to-attorney correspondence under the principle it favors, although there is no warrant for such protection in our rules. This type of a blanket privilege, however, tends to undermine trial courts' and litigants' ability to advance the truth-determining process, while allowing attorneys to exert undue influence over witnesses in a manner inconsistent with the justice system's need to ensure that testimony held out as "expert" is not, in essence, disguised advocacy for one side's interests.

such correspondence is affirmatively discoverable regardless of content.[7] As noted, Rule 4003.3 immunizes from discovery items falling under the work-product doctrine as delineated in that rule, and it is impossible to reconcile such protection with a holding that all documents exchanged between counsel and an expert are discoverable independent of whether they contain attorney work product. In this regard, we find persuasive the analysis set forth by one of our federal colleagues, who hypothesized that

> a lawyer ... might ... write memoranda to her own file that reflected her candid assessments of the evidence in the case and of the probabilities that different, competing views of the relevant law might be endorsed by the court.... Such memoranda would represent classic opinion work product[.] ... If the lawyer who wrote these memoranda later decided to hire a testifying expert, then shared these memoranda with that expert in order to help him think through the matters about which he would offer his expert opinion at trial, we could not say that the policies that inform the work product doctrine would no longer have any applicability to these documents. The discoverability of such documents still could have at least some adverse impact on the system of incentives that is said to underlie our adversarial adjudicatory process and to inspire the work product doctrine.

*Intermedics*, 139 F.R.D. at 390–91.

In light of the above, it seems apparent that correspondence containing no core attorney work product lies outside of the protective ambit of Rule 4003.3's exception,[8] while documents

7. The trial court's specific holding is unclear. The court acknowledged that an attorney's work product is not discoverable, but in the next sentence, it announced without qualification that, "where an expert is being called to advance a plaintiffs case in chief and the nature of the expert's testimony may have been materially impacted by correspondence with counsel, such correspondence is discoverable." *Barrick*, No. 07–3604, *slip op.* at 5–6.

8. The Justices favoring affirmance agree that these types of documents are not, protected by Rule 4003.3, but conclude nonetheless that they should be shielded from discovery under its newly-minted bright-line rule. *See* Opinion in Support of Affirmance, at 688–89 n. 12. This

consisting solely of core work product are protected in their entirety. If a communication contains a mixture of such work product and other material, both sets of policy objectives are served if that portion of the document consisting of core work product is protected, while the remainder is subject to discovery. *Accord, e.g., Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 595 (3d Cir.1984) (concluding that "where the same document contains both facts and legal theories of the attorney, the adversary party is entitled to discovery of the facts," even if this requires redaction); *Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.,* 891 A.2d 838, 847–48 (R.I.2006) (following *Bogosian* in interpreting Rhode Island's discovery rules). It is counsel's duty, in the first instance, to determine which portions of a given document are protected pursuant to Rule 4003.3, and as such, must be redacted. Moreover, we agree with the Barricks that attorneys are presumed to "take seriously their obligation to comply with the Rules and respond truthfully to discovery" by "honorably search[ing] their files and hand[ing] over all" requested documents not protected by the work-product doctrine or a privilege. Brief for Appellees at 14.

Nor do we view the potential need for *in camera* review to be as burdensome as the trial court has suggested here. Rather, as with any other request for the production of documents, the Barricks will be able to withhold or redact materials they believe are protected as core attorney work product, submit a log identifying these items, and involve the court only as necessary. *Cf. Crowe,* 891 A.2d at 848 (explaining that the court's approach permits trial judges to "examine communications exchanged between attorneys and testifying experts as they are sought, and to make independent determinations about their classification as factual or opinion work product[; a] trial [judge] then will be better equipped to decide which information warrants protection as mental impressions, conclusions, opinions or legal theories"). This is the same procedure utilized for assertions of other types of pro-

conclusion, however, is untethered to any procedural rule or other authority.

tections, such as the attorney-client privilege, and the trial court provided no basis for its conclusion that redaction of the pertinent documents would be impracticable, other than the difficulty of separating the opinions of counsel from the opinions of the expert. *Barrick*, No. 07–3604, *slip op.* at 5. However, such quandaries may arise in any case, and this Court has recognized "a particularized need for trial court involvement in determining the appropriate scope of discovery in individualized circumstances." *Cooper*, 588 Pa. at 521, 905 A.2d at 492–93 (citation omitted). All of this is, of course, subject to the proviso that only the items listed in Rule 4003.5(a)(1) are discoverable without any showing of cause, and only via interrogatories, while inquiry into collateral information must be made through the cause-shown criterion of Rule 4003.5(a)(2). *See id.* at 521, 905 A.2d at 492.[9]

The Opinion in Support of Affirmance would affirm the Superior Court without qualification and thereby shield all communications, including those that originated with the expert, under the guise of protecting the attorney-work-product privilege, even where nothing in the correspondence could be construed as core work product. *See* Opinion in Support of Affirmance, at 688 ("[I]t is preferable to ... provid[e] a bright-line rule barring discovery of attorney-expert communications."). This position appears to be based, at least in part, on the concept that attorneys and trial courts would have undue difficulty deciding on necessary redactions. Notably, however, pursuant to this Court's decision in *Cooper* the handling of such requests already entails trial court involvement to determine whether the cause-shown prerequisite has been satisfied. *See Cooper*, 588 Pa. at 521, 905 A.2d at 492–93; *see also id.* (recognizing "a particularized need for trial court involvement in determining the appropriate scope of discovery in individualized circumstances"). We see no reason why it is any more difficult to determine what material should be

---

9. Whether Appellants are entitled to show cause for additional discovery under Rule 4003.5(a)(2), given the unusual procedural history of this case, is beyond the scope of the question we accepted for review. We would direct the common pleas court to make that determination in the first instance on remand.

redacted to protect attorney work-product relative to these very same items.[10]

Finally, the Opinion in Support of Affirmance's proffered bright-line rule relies heavily on policy considerations supporting a proposed rule change suggested by our Civil Procedural Rules Committee, and all but accepts as fact a portion of the explanatory comment inserted by the Committee to the effect that it is "current practice in Pennsylvania" not to seek discovery of attorney-expert correspondence. *See* Opinion in Support of Affirmance, at 689. Notably, however, the record does not reflect that premise, and it would be jurisprudentially questionable to resolve this matter based on such an unsupported allegation. Additionally, with tens of thousands of licensed attorneys in this Commonwealth, it seems counterintuitive that virtually all of them would voluntarily adhere to an unwritten "practice" of not seeking materials that could be favorable to their clients' interests. Indeed, the present dispute offers a ready counter-example. More fundamentally, while this Court may ultimately adopt the proposed amendment, we disagree that this should be accomplished in whole or in part via disposition of the present appeal. Rule amendments fall under the Court's rulemaking prerogatives and are ordinarily prospective in nature, *see, e.g., Commonwealth v. Hill,* 609 Pa. 410, 428, 16 A.3d 484, 495 (2011), whereas our review of a challenged trial court order should generally be undertaken relative to the governing provisions in force at the time the order was issued.

In this respect, the Justices supporting affirmance protest that their "consideration of the proposed amendment to the

10. Although the Opinion in Support of Affirmance quotes the official comment to Rule 4003.3 stating that the rule immunizes "nothing more" than the lawyer's "mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories," its proposed ruling effectively ignores that limitation by protecting much more than those items on the basis of its speculative assessment of the difficulty of differentiating between work product and non-work product. *See supra* note 8. Our own view, as noted, is that courts are capable of making these discernments, and must do so to ensure compliance with existing discovery rules, regardless of whether an aggrieved party may ultimately seek appellate review of such determinations.

rule is entirely separate … from the determination of the case before us," and that the present case "is governed by the current rule." Opinion in Support of Affirmance, at 689. Notably, however, and as developed above, our rules generally prescribe that "a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial." Pa.R.C.P. 4003.3. Further, "the court may order further discovery" of materials pertaining to an opposing party's expert witness, so long as the cause-shown prerequisite is satisfied. Pa.R.C.P. 4003.5(a)(2). The Justices supporting affirmance would undercut these provisions in order to "err on the side of protecting the attorney's work product by providing a bright-line rule" precluding discovery of all correspondence between an attorney and an expert, even where the correspondence contains no attorney work-product. Opinion in Support of Affirmance, at 688–89. Contrary to the portrayal in the lead opinion, such a precept is affirmatively contrary to the text of Rules 4003.3 and 4003.5(a)(2), and impedes the truth-determining process.

For the reasons given, we would vacate the opinion of the Superior Court and remand the matter for further proceedings.

Chief Justice CASTILLE and Justice EAKIN join.