**Hakim v. Erie Insurance Exchange**

C.P. of Monroe County, No. 6241 CIVIL 2013

*Michael J. Foley*, for plaintiffs.
*Domenic P. Sbrocchi* and *Peter J. Speaker*, for defendant.

WILLIAMSON, *J.*, March 18, 2015—This matter comes before us on four separate motions filed by William Hakim and Joann Hakim (hereafter Plaintiffs), and Erie Insurance Exchange (hereafter Defendant). On November 26, 2014, Plaintiffs filed a Motion to Compel Responses to Request and Produce Documents. On December 16, 2014, Defendant filed a Motion to Sever and Stay Bad Faith and Extra-Contractual Claims. On December 16, 2014, Defendant filed a Motion to Amend Answer and New Matter. On December 19, 2014, Defendant filed an Answer to Plaintiffs' Motion to Compel, along with Objections to Plaintiffs' Proposed Subpoena to Valley Sports & Arthritic Surgeons (VSAS).

## Background

In the underlying Complaint filed by Plaintiffs, they allege that William Hakim was operating his vehicle on Route 611 in the Borough of Mount Pocono when Edward Reynolds illegally entered an intersection and caused a violent collision with Mr. Hakim's vehicle causing Mr. Hakim serious injuries, damages, and losses. At the time of the accident, Mr. Hakim had liability, first party medical benefit, and underinsured motorist coverage through Erie Insurance Exchange. Defendant has paid some medical benefits, but denied others. Plaintiffs filed an action for underinsured motorist benefits. Plaintiffs also brought a bad faith claim against Defendant alleging a violation of

Section 1712 of the Motor Vehicle Financial Responsibility, which Plaintiffs state requires that Defendant pay for all reasonable and necessary medical treatment received by Mr. Hakim due to injuries sustained from the accident.

On October 23, 2013, and September 2, 2014, the Plaintiffs served Interrogatories and Request for Production of Documents requesting the financial information of Dr. DiBenedetto. He had performed a medical examination of the Plaintiff at the request of Defendant, on November 17, 2008. The Defendant filed objections to this request and to supplemental interrogatories requesting information about contact between the Defendant and Infinity Insurance Company. Plaintiffs argue that Defendant knew Dr. DiBenedetto was a biased evaluator and their objections are meritless. Plaintiffs allege that Defendant has had all of Plaintiffs' medical information and reports since February 19, 2006. Plaintiffs further argue that Defendant has denied medical benefits based on the information provided by Dr. DiBenedetto.

## Argument

Plaintiffs' Motion to Compel Defendant's Responses to Requests for Production of Documents

In their Motion to Compel Defendant's Responses to Requests for Production, Plaintiffs' request that Defendant provide: 1) The Erie Claims Manual in effect in February 2007, 2) Audrey Ziegler's claim file, which Plaintiffs agree to maintain confidentially absent further Court Order, 3) The financial relevance between Defendant and Dr. DiBenedetto set forth in Plaintiffs' Interrogatories and Request to Produce, and 4) Interrogatories requesting

all contact between Infinity (the automobile insurance carrier for a third-party defendant in a related claim) and Defendant.

Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. Pa.R.C.P. No. 4003.1.

No discovery, including discovery of electronically stored information, shall be permitted which: (a) is sought in bad faith; (b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party; (c) is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6; (d) is prohibited by any law barring disclosure of mediation communications and mediation documents; or (e) would require the making of an unreasonable investigation by the deponent or any party or witness. Pa.R.C.P.No.4011.

I. The Erie Claims Manual

In their Motion to Compel Defendant's Responses to Requests for Production, Plaintiffs' request that Defendant provide their claims manual which was in effect in February 2007. A trial court may consider the insurer's claims manual when considering bad faith. *Zappile v.*

*Amex Assur. Co.*, 928 A.2d 251, 258 (2007). An insurance company's manual, which dictates a certain philosophy in claims handling, may be relevant and useful in evaluating a bad faith claim. *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 382 (2002).

While the Erie Claims Manual which was in effect in February 2007 is likely discoverable, this Court will stay a decision on this particular matter at this time pending submission of the claims manual by the Defendant to this Court for an in camera inspection, together with a detailed explanation of the matters claimed to be privileged and confidential, with a copy of such explanation supplied to Plaintiffs' counsel. The submission shall be made directly to the Court within thirty (30) days.

II. Audrey Ziegler's Claim File

In their Motion to Compel Defendant's Responses to Requests for Production, Plaintiffs' request that Defendant provide them with Audrey Ziegler's personnel file. Plaintiffs argue that this is discoverable because Ms. Ziegler was the adjuster who handled Mr. Hakim's claim and her personnel file may lead to admissible evidence.

As of this time, Defendants have failed to articulate a specific reason as to why the discovery of Audrey Ziegler's claim file in this matter is not relevant. Audrey Ziegler is allegedly no longer employed by Defendant, but the Plaintiffs can still seek this information. The claim file could be relevant to the underlying bad faith claim, and the contract claim. We agree that privileged/ confidential information need not be disclosed (i.e. adjuster or Defendant's value of the case; attorney/client

communications) and Defendant may redact necessary privileged and confidential information not relevant to the bad faith claim.

III. The financial relevance between Defendant and Dr. DiBenedetto

In their Motion to Compel Defendant's Responses to Requests for Production, Plaintiffs' request that Defendant provide information regarding the financial relationship between Defendant and Dr. DiBenedetto. This includes a request for Defendant to produce how many examinations, PRO's, URO's, depositions or other evaluations of any type that Dr. DiBenedetto conducted on behalf of Defendant, listing case and attorney; for each year from 2003 through 2007. Plaintiffs also request that Defendant produce copies of any and all 1099's or W-2's issued to Dr. DiBenedetto between 2004 and 2009. Plaintiffs argue such information is discoverable due to Dr. DiBenedetto's financial compensation for work performed at the Defendant's request.

In *J.S. v. Whetzel*, the Superior Court of Pennsylvania held that a party may impeach an expert witness by examining his relationship with the counsel calling him and any previous participation in certain types of litigation, so long as this inquiry is relevant to the main issue before a court. *J.S. v. Whetzel*, 860 A.2d 1112,1121 (2004). In *Feldman v. Ide*, the Superior Court of Pennsylvania held that the trial court did not have authority to order a defendant to disclose five years of medical expert's income information, and thus, even if plaintiff in a negligence case was able to demonstrate a significant pattern of compensation related to the expert's

testimony, an order granting plaintiff's discovery request, seeking, among others, five years of the expert's federal income tax returns and other tax records relating to services rendered by the expert in personal injury cases, was overly broad. *Feldman v. Ide*, 2007 PA Super 10, 915 A.2d 1208 (2007).

In *Cooper v. Schoffstall*, the Supreme Court of Pennsylvania found that there were procedures supporting adequate trial preparation on the issue of potential bias of a non-party expert witness less burdensome than production of personal financial records. *Cooper v. Schoffstall*, 588 Pa. 505, 527, 905 A.2d 482, 496 (2006). In a concurring opinion, Justice Newman wrote separately to "emphasize his belief that pursuing the personal financial information of an expert witness is, with few exceptions, an abuse of the discovery process." *Cooper v. Schoffstall*, 588 Pa. 505, 528, 905 A.2d 482, 496-97 (2006) (Newman, J., concurring).

At this time, this Court finds that there are less burdensome procedures to establish any potential bias of Dr. DiBenedetto in this case than the production of his personal financial information and tax returns. Plaintiffs can obtain relevant information through depositions and will be able to cross-examine Dr. DiBenedetto at the time of trial about his compensation for each IME, how many he routinely performs, etc. We see no exception to the general rule here that warrants production of this information. Therefore, the Motion to Compel the financial information of Dr. DiBenedetto will not be granted at this time.

IV. Contact between Defendant and Infinity.

In their Motion to Compel Defendant's Responses to Requests for Production, the Plaintiffs request that Defendant respond to Supplemental Interrogatories which state: "Please identify any contact you/or anyone from Erie Insurance has had with anyone representing Infinity Insurance Company throughout the course of this litigation regarding Mr. Hakim's claim."

Generally, we agree that there is nothing privileged or confidential about the requested information. It also appears relevant. Therefore, such information is discoverable.

However, the Defendant objected to the discovery as Plaintiffs exceeded the limit for the total amount of interrogatories allowed without leave of Court under the local rule. "Except upon leave of Court or agreement of the parties, interrogatories, including subpart thereto, shall not exceed twenty-five (25) in number." PA. R. MONROE CTY. CT. RCP. Rule 4005. Plaintiffs have not obtained leave of Court and the Defendant contends the total number of interrogatories exceeds twenty-five (25) in number. Plaintiffs contend the Defendant previously submitted Interrogatories in excess of 25, too, so essentially, it is fair. The Plaintiffs miss the point of the Rule; that being that *if* a party objects to a party exceeding the limit, the matter shall be brought before the Court to determine if it would be reasonable to allow more. Each instance is fact-specific. Whether or not the other side had done likewise or not without objection is not the issue, (although it could be a factor in the Court's determination of what is reasonable when a request is brought before the Court). The issue is whether or not there is an objection, and if so, has the non-objecting party filed a Motion to Exceed the Maximum

Number of Interrogatories to properly bring the matter before the Court. This matter is currently before the Court on a Motion to Compel a Response which is not the proper procedure.

In any event, in the interest of time and judicial economy, and in hopes counsel will work better together in the future on these issues, we will accept Plaintiffs' Motion to Compel as a Motion to Exceed the Maximum Allowable Interrogatories. We will also grant that request. We express our opinion that the requested information of contact with Infinity Insurance is relevant, but do not issue an Order in that regard as Defendant's obligation now that the objection is overruled is to Answer or raise a different objection if grounds exist to do so. Therefore, Plaintiffs' Motion to Compel an answer to that specific interrogatory is denied at this time as moot.

Defendant's Motion to Amend New Matter and Assert Statute of Limitations Defense

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted. Pa.R.C.P. No. 1033.

A trial court's discretion to grant or deny permission to amend a pleading is not unfettered, and amendments should be allowed liberally at any stage of the case unless

they violate law or prejudice rights of an opposing party. *Gutierrez v. Pennsylvania Gas & Water Co.*, 507 A.2d 1230 (1986). The time at which amendment is sought is a factor to be considered in deciding whether to grant or deny permission to amend a pleading, but only insofar as it presents a question of prejudice to an opposing party. *Id.* A trial court's denial of a petition to amend a pleading is an abuse of discretion where denial is based on nothing more than unreasonable delay. *Id.*

Although leave to amend a pleading is within the sound discretion of a trial court, amendments to an answer to plead an affirmative defense should be allowed unless they violate law or prejudice rights of an opposing party. *Soxman v. Goodge*, 372 Pa. Super. 343, 539 A.2d 826 (1988).

In their Response to Defendant's Motion, Plaintiffs cite a case from the Court of Common Pleas of Lycoming County. In *Allen v. Lipson*, the issue before the court was whether defendants had to plead the material facts on which an affirmative defense was based in their new matter. *Allen v. Lipson*, 8 Pa. D. & C. 4th 390, 391 (Lycoming Cty., 1990). In that case, the new matter set forth the affirmative defense of contributory negligence in general terms that the court stated were totally unsupported by factual allegations. *Id.* The court in that case held that the defendants had to plead the material facts on which their affirmative defense of contributory negligence was based. *Id.*

In their Response to Defendant's Motion, Plaintiffs also cite to *Catania v. Hanover Ins. Co.*, a case in which the Superior Court of Pennsylvania stated that, "We

recognize the Commonwealth's policy of permitting liberal amendment of pleadings. Nevertheless, such a policy does not extend to the amendment of pleadings for the purpose of asserting a defense not provided by law." *Catania v. Hanover Ins. Co.*, 389 Pa. Super. 144, 151, 566 A.2d 885, 889 (1989). However, that holding is not relevant here because the affirmative defense promulgated by Defendant, statute of limitations, is provided by law.

Here, Defendant intends to assert the affirmative defenses of statute of limitations and bankruptcy; both of which are provided by law. Since amendments to pleadings are to be liberally allowed, Defendant will be allowed to amend their new matter to assert these affirmative defenses. However, Defendant must assert the factual basis for these affirmative defenses with specificity in the amendment to new matter.

Defendant's Motion to Sever and Stay Bad Faith and Extra Contractual Claims

First, we will address the issue of whether to sever the bad faith claims from the contractual claims. Defendant argues that Plaintiffs are already seeking discovery for their bad faith claim which is irrelevant to and would prejudice the contractual UIM and PIP cases. Defendant argues that, even in the absence of such discovery, bifurcation is necessary in order to avoid loss of privilege at trial, unfair prejudice, confusion, inconsistent verdicts, inconvenience, and a waste of resources.

The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim,

or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues. Pa.R.C.P. No. 213(b). The court should base its decision on a case-by-case basis.

In their Brief in Opposition to Defendant's Motion to Sever, Plaintiffs cite *Birth Center v. St. Paul Co. Inc.*, a case in which the Superior Court of Pennsylvania held that an "Insurer's refusal to settle a claim within policy limits without a bona fide belief that it has a good possibility of winning, constitutes breach of its contractual duty to act in good faith and its fiduciary duty to its insured, and thus, insurer is liable for known and/or foreseeable compensatory damages of its insured that reasonably flow from the bad faith conduct of the insurer." *Birth Ctr. v. St. Paul Companies, Inc.*, 567 Pa. 386,787 A.2d 376 (2001). Plaintiffs argue that, similarly, there could be consequential damages such as emotional distress from failure to allow proper medical care in this case. Plaintiffs assert that this supports the notion that the Motion to Sever should be denied. However, there was no issue involving severance decided in *Birth Ctr. v. St. Paul Co. Inc.*, and that case is not relevant to the issue at hand as of this time.

In *Orsulak v. Penn National*, this Court stated: "Evidence put forth in the bad faith claim for the Court to consider would likely confuse the jury and its role in the proceedings. Certain information disclosed for purposes of the bad faith claim could also prejudice the jury against [the defendant]." *Orsulak v. Penn National*, No. 4255-CV-2011 (C.P. Monroe Co. Jan. 14, 2013, Williamson, J.).

As in *Orsulak*, this case involves a motion to sever bad faith claims against an insurance company from contractual claims against that insurance company. We find the Defendant in this case would be prejudiced by joining the bad faith claims with the contractual claims during the trial. There may be information that is relevant to the bad faith claim that is not relevant to the contractual claims which would prejudice Defendant in the eyes of the jury. There is no indication at this time that the need for judicial economy outweighs the prejudice. Furthermore, for the reasons set forth in our prior decision in *Orsulak, supra.*, we will grant the motion to sever the bad faith claim in this matter.

Next, the Defendant argues that this Court should stay discovery with respect to the bad faith claims pending resolution of the contractual claims. In *Gunn v. Automobile Ins. Co. of Hartford, CT*, the Superior Court of Pennsylvania stated:

> "[The] trial court order, denying automobile insurer's motion to stay insured's bad faith claim and preclude discovery pertaining only to that claim until resolution of insured's breach of contract claim, did not implicate a right deeply rooted in public policy so as to warrant immediate appellate review as collateral order in action arising from insurer's nonpayment of underinsured motorist (UIM) benefits; insurer's concerns that courts and parties would be required to engage in protracted discovery and preparation for litigation that might prove unnecessary did not outweigh countervailing interests of avoiding piecemeal litigation or delay."

*Gunn v. Auto. Ins. Co. of Hartford, Connecticut*, 2009 PA Super 70, 971 A.2d 505 (2009).

In *Orsulak v. Penn National*, this Court granted the defendants' motion to sever the bad faith claim from the contractual insurance claims, but denied the defendants' motion to stay discovery on the bad faith claim pending resolution of the contractual claims. *Orsulak v. Penn National, supra.* The reasoning was that staying all discovery with respect to the bad faith claim would cause unnecessary delay and there were better measures the Court could take to avoid prejudice during the discovery process once prejudice was shown. *Id. See also Cocuzza v. Castro,* No. 406 Civil 2012 (C.P. Monroe Co., July 12, 2012, Zulick, J.) (Court denied preliminary objections and allowed case to remain consolidated until discovery was completed).

Similarly, in this case, staying discovery on the bad faith claims until after the resolution of the contractual claims would unfairly delay a conclusion of all proceedings. Staying discovery on the bad faith claims would cause unnecessary delay, and there are more efficient measures this Court can use to protect the Defendant from prejudice while not ordering a blanket freeze on all discovery with respect to the bad faith claims. Furthermore, moving the cases along at the same pace, with discovery in both cases, may lead to a quicker resolution for the actual parties and a better understanding of the actual issues.

At this time in the litigation, Defendant has failed to demonstrate any actual prejudice to dual discovery. Defendant argues that certain discovery which has already been requested, such as claims manuals and personnel files, are inappropriate for simultaneous discovery with the contractual claims. Defendant also argues that simultaneous discovery will make

settlement negotiations virtually impossible. Defendant has only made these general claims of potential prejudice at this time. If actual prejudice can be shown as the discovery process continues, this Court can always bar certain discovery as it pertains to the bad faith claims until the resolution of the contractual claims. As in *Gunn* and *Orsulak*, the Defendant's concerns regarding protected discovery when it comes to the bad faith claims do not outweigh the countervailing interests of avoiding piecemeal litigation or delay by staying all discovery with respect to the bad faith claims pending resolution of the contractual claims. Furthermore, in the interest of time, costs, and potential settlement, providing full discovery on all issues would likely speed up, rather than delay, and costs could be less. Issues often resulting in dual discovery may not arise. Judicial economy, and any hope for an agreed resolution in this case will require discovery of all issues.

Therefore, Defendant's Motion to Sever the bad faith claims from the contractual claims is granted; however, Defendant's Motion to Stay discovery with respect to the bad faith claims pending resolution of the contractual claims, is denied.

Defendant's Objections to Plaintiffs' Proposed Subpoena to VSAS

On December 3, 2014, Plaintiff filed a proposed subpoena which requests that VSAS produce, "any communication, correspondence, memorandums, reports; including any records of any communication and payments, billing statements between VSAS, Dr. DiBenedetto, and Erie Insurance Company, including Audrey Ziegler, but not limited to her." Defendant filed Objection to this Proposed Subpoena to VSAS by Plaintiff.

If objections are received by the party intending to serve the subpoena prior to its service, the subpoena shall not be served. The court upon motion shall rule upon the objections and enter an appropriate order. Pa.R.C.P. No. 4009.21(d)(1).

Rule 4003.5 specifically addresses discovery related to expert witnesses who are expected to testify at trial, where such information is "otherwise discoverable" under Rule 4003.1, which recognizes that privileged documents are not discoverable. Generally, a party may discover "facts known and opinions held by an expert" through interrogatories requiring the party to identify the testifying expert witness, the subject matter on which the expert will testify, "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Pa.R.C.P. 4003.5(a)(1)(b). Moreover, "upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate." Pa.R.C.P. 4003.5(a) (2), *Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity*, 91 A.3d 680, 687 (Pa. 2014).

In *Barrick*, the Superior Court of Pennsylvania found that parties may seek discovery of information through interrogatories propounded under Rule 4003.5(a)(1) and where appropriate, may obtain further discovery "upon cause shown" as supervised by our trial courts in accord with 4003.5(a)(2). *Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity*, 91 A.3d 680, 688 (Pa. 2014). Additionally, the court stated that an expert's opinions can be challenged on cross-examination. *Id.* The court held

that it was preferable to err on the side of protecting the attorney's work product by providing a bright-line rule barring discovery of attorney-expert communications. *Id.*

In *Cooper v. Schoffstall*, the Supreme Court of Pennsylvania held that the threshold showing to establish cause for supplemental discovery related to potential favoritism of a non-party expert witness retained for trial preparation is of reasonable grounds to believe that the witness may have entered the professional witness category. *Cooper v. Schoffstall, supra.* The court stated that, in other words, the proponent of the discovery should demonstrate a significant pattern of compensation that would support a reasonable inference that the witness might color, shade, or slant his testimony in light of the substantial financial incentives. *Id.*

Discovery along these lines should be of the least burdensome and intrusive kind possible, and that the appropriate entry point, upon the showing of cause, is a deposition by written interrogatories under Rule 4004. *Id.* The court in *Cooper* continued to expand on this notion and stated that:

"Through this vehicle, and subject to the trial court's exercise of its sound discretion, the proponent of the discovery may be permitted to inquire as to the following: the approximate amount of compensation received and expected in the pending case; the character of the witnesses' litigation-related activities, and, in particular, the approximate percentage devoted to specific types of litigation and/or work on behalf of a particular litigant, class of litigant, attorney, and/or attorney organization; the number of examinations,

investigations, or inquiries performed in a given year, for up to the past three years; the number of instances in which the witness has provided testimony within the same period; the approximate portion of the witness's overall professional work devoted to litigation-related services; and the approximate amount of income each year, for up to the past three years, garnered from the performance of such services."

*Id.*

The Supreme Court of Pennsylvania found that there were procedures supporting adequate trial preparation on the issue of potential bias of a non-party expert witness that was less burdensome than production of personal financial records. *Id.* Similarly, here, there are less burdensome procedures to obtain information regarding the potential bias of Dr. DiBenedetto than a subpoena to VSAS compelling the production of financial information and billing statements related to Dr. DiBenedetto. This is an end around to the request for Dr. DiBenedetto's personal tax records. As in Barrick, the proper method of trial preparation for potential bias of an expert witness is through interrogatories and depositions. Plaintiffs have failed to demonstrate the significant pattern of compensation required to deem Dr. DiBendetto a professional witness for the purposes of supplemental discovery at this time. Even if Dr. DiBenedetto were to be deemed a professional witness, there are less burdensome means of supplemental discovery than Plaintiffs' proposed subpoena to VSAS, including taking the doctor's deposition. Thus, Defendant's objections to Plaintiffs' proposed subpoena to VSAS are granted.

## Conclusion

Therefore, Plaintiffs' Motion to Compel Defendant's Responses to Requests for Production is granted as to the claim file of Audrey Ziegler. It is denied as to the financial information of Dr. DiBenedetto. The Motion to Compel taken as a Motion to Exceed Limit of Interrogatories to allow questions about the contact between Defendant and Infinity is granted. This court will stay its decision on the Motion to Compel the Erie claims manual pending further information to be submitted to the court regarding which portions are relevant and which are confidential. Defendant's Motion to Amend New Matter and Assert Statute of Limitations will be granted, but any affirmative defenses must be plead with specificity with supporting factual averments. Defendant's Motion to Sever is granted but Defendant's Motion to Stay Discovery is denied as of this time. Also, Defendant's Objections to Plaintiffs' Proposed Subpoena to VSAS are granted.

## ORDER

AND NOW, this 18th day of March, 2015, upon Motion of Plaintiffs to Compel Defendant's Responses to Requests for Production, Motion of Defendant to Amend New Matter and Assert Statute of Limitations, Motion of Defendant' to Sever and Stay, and Defendant's Objections to Plaintiffs' Proposed Subpoena to VSAS, it is ORDERED and DECREED as follows:

1. Plaintiffs' Motion to Compel Defendant's Responses to Requests for Production is GRANTED consistent with the Opinion of this Court. However, the Defendant shall, within 30 days of the date of this Order, provide

this Court with a copy of the Erie Claims Manual which was in effect in February 2007 for an in camera review, together with an explanation provided to this Court with a copy of the explanation to Plaintiffs' counsel as to why portions are privileged or confidential. The Defendant shall provide the claim file, with redaction of any privileged or confidential information concerning the value of the case or attorney/client communication. The Plaintiffs' Motion to Compel as to the Interrogatory concerning contact with Infinity Insurance is taken by this Court as a Request to Exceed the Maximum Number of Interrogatories and is GRANTED. Defendant's objection to same is OVERRULED.

2. Defendant's Motion to Amend New Matter and Assert Statute of Limitations and Bankruptcy is GRANTED.

3. Defendant's Motion to Sever Plaintiffs' Bad Faith Claims is GRANTED

4. Defendant's Motion to Stay Discovery on Plaintiffs' Bad Faith Claims is DENIED.

5. Defendant's Objections to Plaintiffs' Proposed Subpoena to VSAS are GRANTED.