J-S24017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LOUIS VIOLA, JR. AND LOUIS VIOLA, SR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| GENERAL ACCIDENT INSURANCE CORPORATION, GENERAL ACCIDENT INSURANCE AND CAMDEN FIRE INSURANCE ASSOCIATION, | |
| Appellees | No. 2446 EDA 2014 |

Appeal from the Order entered July 2, 2014,
in the Court of Common Pleas of Philadelphia County,
Civil Division, at No(s): 03865 September Term 1997

BEFORE:  GANTMAN, P.J., ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED APRIL 13, 2015**

Father and son, Louis Viola, Sr., and Louis Viola, Jr., (collectively "Appellants"), appeal from the trial court's order denying Appellants' motion for sanctions against General Accident Insurance Corporation, General Accident Insurance, and Camden Fire Insurance Association, (collectively "General Accident"), and interest on the settlement proceeds that Appellants were due to receive from General Accident.  We affirm.

In resolving the first of two prior appeals which Appellants have presented to our Court, we summarized the "pertinent facts and procedural history" of this action as follows:

In April and September 1993, Appellant Louis Viola, Jr.
was involved in two separate motor vehicle accidents.  The

vehicles he operated during each accident were owned by his father, Appellant Louis Viola, Sr., who was also a passenger in the September 1993 accident. Appellant Louis Viola, Sr. was insured by State Farm, and Louis Viola[,] Jr. was insured by General Accident.

Appellants commenced this action by filing a petition to appoint third/neutral arbitrator and complaint on September 29, 1997, against [General Accident], alleging damages resulting from both motor vehicle accidents. By order dated November 23, 2001, Appellants were directed to support their claims against [General Accident] with evidence, including supporting documentation of any wage loss incurred, by January 31, 2002. Five years elapsed without Appellants providing this documentation. [General Accident] filed motions for summary judgment. Appellants filed a reply to each motion. The trial court granted both motions, thereby dismissing Appellants' claims with prejudice.

*Viola v. Krouse, et al.,* 954 A.2d 49 (Pa. Super. 2008) (unpublished memorandum) at 1-2, *petition for allowance of appeal denied* 964 A.2d 2 (Pa. 2009) ("*Viola I*").

In *Viola I,* Appellants queried "[w]hether the trial court erred in granting summary judgment with respect to the wage loss claims of [Appellants] where [Appellants] did not possess documentary evidence relating to such claims but where [they] did propose to offer oral testimony to support their wage loss claim?" *Id.* at 2. We noted that "[w]ithin the argument portion of their brief, Appellants also argue that the trial court erred in dismissing Appellant Louis Viola, Jr.'s claim for unpaid medical expenses. As this claim was not identified in their statement of the issues, we will not consider it further. *See generally,* Pa.R.A.P. 2116(a)." *Viola I,* at 4 n.3.

After reviewing the record, including the trial court's assertion that Appellants "have failed over five years to comply with the [trial] Court's discovery order and provide evidence to support their claims," we "concluded that the trial court did not err in granting summary judgment" in favor of General Accident. *Id.* at 5-6.

In resolving Appellants' second appeal to our Court, we provided the following additional background regarding this action:

[Following our Supreme Court's denial of Appellants' petition for allowance of appeal referenced above,] [o]n October 1, 2009, the arbitration panel, tasked with resolving the outstanding uninsured/underinsured motorist claims, dismissed [Appellants'] [reasserted] wage-loss claims for failure to provide documentation. On December 9, 2009, Arbitrator James McEldrew, Esquire, scheduled an arbitration hearing to resolve the single remaining uninsured/underinsured motorist claim. However, due to a scheduling error the other two arbitrators were not present. As the hearing could not proceed, the parties entered settlement negotiations facilitated by Arbitrator McEldrew, and the parties allegedly agreed on the sum of $10,000 to Louis Viola, Sr. and $15,000 to Louis Viola, Jr. [FN4: There appears to be agreement on the award, as the record indicates that [Appellants] repeatedly requested that General Accident pay this sum.] General Accident also contends that [Appellants] agreed to release General Accident and its successor-in-interest from all claims related to the 1993 accidents. Arbitrator McEldrew affirmed the terms of the settlement as described by General Accident in an affidavit.

General Accident immediately presented [Appellants] with release letters for signature accepting the terms of the settlement, and requested tax information needed to process the payments. [Appellants] initially failed to respond to General Accident's communications. They then objected to the "release of all claims" provision and refused to release OneBeacon America Insurance Company, the successor-in-interest to the now defunct parties [Appellants] originally sued. After several months of continued negotiation over the release language, on

- 3 -

or about May 11, 2010, General Accident filed a Motion to Enforce Settlement, first with the arbitration panel, and when [Appellants] objected to that forum, with the trial court. The trial court issued the order now on appeal, which enforced the settlement as described by General Accident and Arbitrator McEldrew.

[Appellants] contend that the trial court erred in enforcing the settlement without first holding a full evidentiary hearing to determine if a settlement had actually been reached at the December 2009 meeting, and if so, what the terms of that settlement are. [FN5: [Appellants] claim that only a "tentative settlement" was reached, that was conditioned on General Accident paying the $25,000 as a "condition precedent" to any final resolution of the outstanding claims. Appellants' Memorandum in Support of Answer to [General Accident's] Motion, 1/3/2012. We note that all claims except the uninsured/underinsured motorist claim have been dismissed, either by the trial court or by the arbitration panel.]

*Viola v. Krause, et al.,* 68 A.3d 369 (Pa. 2013) (unpublished memorandum) at 3-4 ("*Viola II*"). Citing prior precedent from our Court requiring trial courts to "hold evidentiary hearings to determine questions of fact relating to a contested settlement[,]" we vacated the trial court's order and remanded the case "for a hearing to determine if the parties reached a settlement on December 9, 2009 and if so, what the terms of that settlement are, and if it should be enforced." *Id.* at 5-6.

Instantly, the trial court set forth the following additional details germane to the present appeal:

On May 9, 2014, this Court was assigned the instant Motion to Enforce Settlement. Said Motion was originally filed December 15, 2011 and, as noted above, was the subject of an appeal. The Motion asserted that prior to arbitration on December 9, 2009, the parties had settled on the remaining Uninsured Motorist ("UIM") claims for the sum of $10,000 to

- 4 -

Louis Viola, Sr. and $15,000 to Louis Viola, Jr., in exchange for full releases. *See* Appellee's Motion to Enforce Settlement, ¶ 11. [General Accident] had forwarded Appellants signed release forms on December 14, 2009; on January 28, 2010, Appellants responded that the releases were unacceptable. *See* [General Accident's] Motion to Enforce Settlement, ¶ 17. Despite [General Accident's] efforts to obtain specific objections to the releases or otherwise effectuate a release, such attempts were unsuccessful. *See* [General Accident's] Motion to Enforce Settlement, ¶ 21-30. Thus, alleging they had been prejudiced due to their reliance upon the settlement, [General Accident] filed the Motion to Enforce. *See* [General Accident's] Motion to Enforce Settlement, ¶ 32-33.

On May 19, 2014, this Court issued a Rule to Show Cause why the requested relief should not be granted.

On June 12, 2014, this Court heard argument and evidence in this matter. A settlement was reached between the parties in 2009. Notes of Testimony, hereinafter N.T., 6/12/14 at 7-8, 11. There was no dispute that a settlement had been reached, only a dispute regarding the terms. N.T. 6/12/14 at 11. Appellants had sued three entities collectively known as General Accident: General Accident Insurance Corporation, General Accident Insurance, and Camden Fire Insurance Association. N.T. 6/12/14 at 9. However, prior to the settlement of the case, General Accident went out of business and sold its interests to OneBeacon America Insurance. N.T. 6/12/14 at 9. [General Accident] presented Appellant with a corrected release naming the three parties sued as well as OneBeacon America Insurance as successor in interest. N.T. 6/12/14 at 10. Appellants then refused to sign the release. N.T. 6/12/14 at 10. Appellants also sought the [ex]clusion of medical and wage loss claims [from] the release as well as interest from December of 2009. N.T. 6/12/14 at 17-18. However, the medical and wage loss claims had been dismissed by the neutral arbitrator prior to the hearing on December 9, 2009. N.T. 6/12/14 at 19-20.

James McEldrew ("McEldrew"), the neutral arbitrator, testified that prior to the hearing on December 9, 2009, he had dismissed the wage claim because sixteen (16) years after the accident underlying this case, Appellants had still provided no documentation of lost wages. N.T. 6/12/14 at 21-22. [FN2: McEldrew, the court-appointed arbitrator, had in error forgotten

- 5 -

to notify the other two arbitrators of the arbitration date. N.T. 6/12/14 at 20, 22. McEldrew offered to reschedule the arbitration and stated that the matter could be rescheduled; that the parties could proceed to arbitration before him alone; or that the time could be used for a settlement conference. N.T. 6/12/14 at 20. All parties agreed to proceed with a settlement conference. N.T. 6/12/14 at 20.] He sat down with counsel for both Appellants and [General Accident] to explain the settlement, and all parties were in agreement with the terms, including the dismissal of the wage loss claim. N.T. 6/12/14 at 22-23. All parties were colloquied prior to settlement. N.T. 6/12/14 at 22-23. McEldrew had never been presented with medical bills as part of the claim or packages, so medicals were not part of the issue. N.T. 6/12/14 at 23.

Additionally, at the outset of the hearing, Allen Feingold ("Feingold"), a disbarred attorney who had represented [Appellants] at the outset of the case, was present. N.T. 6/12/14. Feingold attempted to enter his appearance at the bar of the court; however, he was not permitted to do so. N.T. 6/12/14 at 6. Following the hearing, Feingold presented an entry of appearance for review by the Prothonotary. *See* [General Accident's] Motion to Object to the Entry of Allen Feingold, ¶ 1.

On June 16, 2014, [General Accident] filed a motion objecting to Feingold's entry of appearance. *See* [*id.*] [General Accident] noted Feingold had been disbarred by Order of the Supreme Court of Pennsylvania on August 22, 2008. *See* [*id.* at] ¶ 2. Additionally, on September 2, 2009, the President Judge of this Court entered an Order enjoining Feingold from entering any courtroom, tribunal, arbitration hearing, deposition, and/or to function in any capacity in a legal proceeding other than as a witness, party or spectator. *See* [*id.* at] ¶ 3. Additionally, the Philadelphia Prothonotary's Office may not accept any filing, by electronic means or otherwise, from Feingold without prior approval of the President Judge. See [*id.*]

On June 25, 2014, this Court concluded its hearing in the matter. At that time, [General Accident] stated that it had received Appellants' release forms drafted and signed by Appellants. N.T. 6/25/14 at 6. However, the forms sought only to release "an entity known as GA ... GA does not exist and never has existed." N.T. 6/25/14 at 7. Thus, less than two weeks after receiving the releases, [General Accident] returned

them to Appellant with "GA" stricken out and the parties properly identified, as well as an additional digit needed to correct the policy number. N.T. 6/25/14 at 7-8. No substantive changes were made. N.T. 6/25/14 at 9, 11.

When questioned regarding the differences in language between the release Appellants' counsel had generated and sent to [General Accident], and the release [General Accident] had returned to Appellants, Appellants w[ere] unable to point to any differences between the language. N.T. 6/25/14 at 14-15. Indeed, [General Accident] agreed that the amounts of money in the settlements were correct. N.T. 6/25/14 at 18. Instead, Appellants argued they were entitled to interest on the amount of the settlement because [General Accident] had "not paid" the money. N.T. 6/25/14 at 15. On the second day of argument, Feingold was again present and came to the bar of the court several times during the proceedings to consult with counsel for Appellants, handing counsel for Appellants handwritten notes, as well as making gestures and loudly whispering in the back of the courtroom. N.T. 6/25/14 at 16. This Court again requested that Feingold cease disrupting court proceedings. N.T. 6/25/14 at 16.

Following argument, this Court found that there was a settlement and that it should be enforced, and instructed the parties to submit proposed orders with two or three pages of argument on the interest. N.T. 6/25/14 at 21-22. This Court held the matter under advisement for no more than five (5) days so that Appellants and [General Accident] could prepare the requested materials. N.T. 6/25/14 at 22.

On June 30, 2014, [General Accident] filed a proposed Order and Memorandum of Law in support of their position.

On July 1, 2014, this Court granted [General Accident's] Motion to Enforce Settlement, and ordered Appellants to sign and execute releases in a form substantially identical to that attached as exhibit "S" to the original Motion.

On July 8, 2014, over one (1) week after the due date of the proposed orders and memorandums of law and over one (1) week after the Order was signed, Appellants untimely filed a "True History of This Case and Memorandum."

On August 1, 2014, Appellants filed a timely Notice of Appeal to the Superior Court.

- 7 -

On August 4, 2014, this Court issued its Order pursuant to Pa. R.A.P. 1925(b), directing Appellants to file their Concise Statement of Matters Complained of on Appeal within twenty-one (21) days.

That same day, [General Accident] filed a Motion for Sanctions, as Appellants had not yet returned the signed releases.

On August 6, 2014, this Court ordered that the entry of Allen Feingold be stricken, and [for] the Prothonotary [to] refuse to accept an additional entry of appearance from Mr. Feingold without prior approval from the President Judge of the Court of Common Pleas, per the Order of the Honorable Pamela Dembe of September 2, 2009.

On August 13, 2014, Appellant filed his Concise Statement of Matters Complained of on Appeal[.]  []

On September 5, 2014, this Court dismissed [General Accident's] Motion for Sanctions without prejudice, as it lacked jurisdiction to rule upon it due to the pendency of the instant appeal.

Trial Court Opinion, 10/22/14, at 1-6.

On appeal, Appellants present the following issue:

1. Whether the trial court erred in refusing to grant [A]ppellants sanctions and interest on the settlement proceeds which [General Accident] has repeatedly wrongfully refused to pay?

Appellants' Brief at 3.

Our review of Appellants' issue requires an examination of the trial court's application of Pennsylvania Rule of Civil Procedure 229.1, which governs the imposition of sanctions following a settling defendant's failure to deliver settlement proceeds in a timely manner following the receipt of an executed release from a plaintiff.

We conduct our review mindful that:

"As questions regarding the interpretation of the Rules of Civil Procedure are questions of law, our standard of review is *de novo* and our scope of review is plenary." *Marlette v. State Farm Mut. Auto. Ins. Co.,* 618 Pa. 617, 57 A.3d 1224, 1228 (2012). "Within the ambit of the discretionary authority allocated by the rules to the trial courts, we review for abuse of discretion." *Cooper v. Schoffstall,* 588 Pa. 505, 905 A.2d 482, 488 (2006).

*Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity,* 91 A.3d 680, 686 (Pa. 2014).

Rule 229.1 provides in pertinent part:

**Rule 229.1. Settlement Funds. Failure to Deliver. Sanctions[.]**

(c) If a plaintiff and a defendant have entered into an agreement of settlement, the defendant shall deliver the settlement funds to the attorney for the plaintiff, or to the plaintiff if unrepresented, within twenty calendar days from receipt of an executed release.

\*\*\*

Upon receipt of the settlement funds, the plaintiff shall file a discontinuance or deliver a discontinuance to the defendant.

(d) If settlement funds are not delivered to the plaintiff within the time required by subdivision (c), the plaintiff may seek to

(1) invalidate the agreement of settlement as permitted by law, or

(2) impose sanctions on the defendant as provided in subdivision (e) of this rule.

(e) A plaintiff seeking to impose sanctions on the defendant shall file an affidavit with the court attesting to non-payment. The affidavit shall be executed by the plaintiff's attorney and be accompanied by

(1) a copy of any document evidencing the terms of the settlement agreement,

- 9 -

(2) a copy of the executed release,

(3) a copy of a receipt reflecting delivery of the executed release more than twenty days prior to the date of filing of the affidavit,

(4) a certification by the attorney of the applicable interest rate,

(5) the form of order prescribed by subdivision (h), and

(6) a certification by the attorney that the affidavit and accompanying documents have been served on the attorneys for all interested parties.

(f) Upon receipt of the affidavit and supporting documentation required by subdivision (e), the defendant shall have twenty days to file a response.

(g) If the court finds that the defendant violated subdivision (c) of this rule and that there is no material dispute as to the terms of the settlement or the terms of the release, the court shall impose sanctions in the form of interest calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the interest is awarded, plus one percent, not compounded, running from the twenty-first day to the date of delivery of the settlement funds, together with reasonable attorneys' fees incurred in the preparation of the affidavit.

Pa.R.C.P. 229.1(c) – (g).

In rebutting Appellants' claim of error, the trial court explained:

Appellants argue they are entitled to interest per Pa.R.C.P. 229.1(c), "if a plaintiff and a defendant have entered into an agreement of settlement, the defendant shall deliver the settlement funds to the attorney for the plaintiff ... within twenty (20) calendar days from receipt of an executed release." Pa.R.C.P. 229.1(c). Although in such cases a plaintiff may seek sanctions including interest, *such action would not be proper in a case such as this, where the delay was due to [Appellants'] actions*. Indeed, Appellants refused to sign the corrected release signed and returned to them by [General Accident]. N.T. 6/12/14 at 10.

Thus, this Court properly denied Appellants' claim for interest.

- 10 -

Trial Court Opinion, 10/22/14, at 8 (emphasis supplied). Based on our review of the record, we discern no trial court error.

To invoke Rule 229.1, the parties are required to "have entered into an agreement of settlement," *see* Pa.R.C.P. 229.1(c), the occurrence of which Appellants specifically denied and appealed to our Court, and which was the very issue we remanded for determination by the trial court during the June 2014 hearings. While the trial court ultimately determined, following the June 2014 hearings, that the parties had settled this matter in 2009, Appellants are not entitled to any interest that accrued while they disputed the existence and terms of the agreement.

Further, Rule 229.1 requires "the defendant [to] deliver the settlement funds … within twenty calendar days from receipt of an executed release." Pa.R.C.P. 229.1(c). As noted by the trial court, and as noted by General Accident in their motion for sanctions, at of the time of Appellants' filing of their notice of the instant appeal, Appellants still had not executed the revised release in this matter, which correctly identifies the settling payors and the policy number. **See** Trial Court Opinion, 10/22/14, at 6. While Appellants emphasize their execution of a prior version of the release, Appellants disregard their longstanding dispute regarding the effect of that executed release and the claims and terms covered therein.

Appellants further disregard that the trial court can only impose sanctions and interest "[i]f the court finds that the defendant violated subdivision (c) of this rule **and** that there is no material dispute as to the

- 11 -

terms of the settlement or the terms of the release[.]" Pa.R.C.P. 229.1(g) (emphasis supplied). Here, the trial court did not find that General Accident violated 229.1(c). Moreover, because Appellants raised "material disputes as to the terms of the settlement" and the "terms of the release" following the 2009 agreement, the trial court properly declined to "impose sanctions in the form of interest" against General Accident. *See* Pa.R.C.P. 229.1(g).

In sum, the trial court did not err in denying Appellants' motion for sanctions and interest against General Accident. We thus affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2015

- 12 -